1250 VIRTUAL SOLUTIONS v. MICROSOFT Hi, Mr. Simon. Good morning, Your Honors. Tony Simon on behalf of VIRTUAL SOLUTIONS. There are two reasons, two issues that are dispositive of this case on appeal related to the method the district court found indefiniteness and the reason the district court found indefiniteness. The district court cited the proper test for indefiniteness. And as this court has said many times, the district court has to find the claim either not amenable to construction or insolubly ambiguous. While the district court cited that test, the district court didn't apply that test. The district court instead found that there's a contradiction in the claim based on the claim one's requirement that the physical characteristic signal include position information and that both of those items be used to create a behavior vector later in the same claim. So, you agree that the claim describes a physical characteristic signal which could be composed solely of position information, right? I do not agree with that. Why not? I do not agree with that because the claim itself, I apologize, the claim itself, and this is in the appendix, page A100 at column 16, immediately after saying, interpreting said sensor signals to provide at least one physical characteristic signal including position information, the claim goes on to state, wherein said physical characteristic signal provides information on visitor activity and location within said theater area. Position information by itself wouldn't provide information on visitor activity within the theater area. It wouldn't provide visitor location within the theater area. And that's where I think the district court got it wrong because the claim itself, that's why we said that this term really didn't need to be construed. It's construed right there in the claim. The physical characteristic signal includes position information and separately, it provides information on visitor activity and location. And with respect to another reason, the argument is that it's an aggregate, the physical characteristic signal is an aggregate, potentially a position information, but according to you, necessarily other information. Correct. And in this claim, when you say visitor activity and location, you're saying that location equals position information as referenced above? That issue wasn't addressed. I believe it certainly includes position information, certainly includes... Help me understand this claim. Yes, yes. So just tell me. Yes, yes. It certainly includes the location of the visitor. I mean, basically, what we're doing here is we're creating a behavior vector. We're going to tell this whale, the preferred embodiment, whether it's going to run away from me or come toward me. And so they need two pieces of information in order to do that. You can have more, but at least two. One is, where am I? What's my position in the theater area? If the whale is going to come at me or away from me, the patent very clearly describes a vector either coming toward me or away from me, and the direction of the vector is it aligned between me and the actor. I'm the visitor, the whale is the actor. The second thing that the system needs to do is determine the magnitude of that vector. And it can either be based on the distance, my distance from the whale, and that's part of my location, or it can be based on my activity, which is I'm walking toward the whale, I'm walking away from the whale. And so if I'm far enough away from that whale that it's not bothered by me, based on my location, it doesn't have to do anything. If I start walking toward the whale, my location's changing, but I'm also... That's an activity I'm doing. I'm moving toward the whale. And that's what this claim says. Okay, but let me give you a hypothetical. Suppose we were to reject that argument, and we were to say a physical activity signal can be composed solely of position information. Do you then lose? No. No. Because we still have this issue, which the district court struggled with and I think just never comprehended. A physical characteristic signal is an analysis of the raw data. The raw data doesn't mean describing the preferred embodiment. You have the sensors that create the data, that generate the data, the raw signals. The signal is generated by analyzing that data, and it creates a signal. A signal is a method of communication within a computer. Well, where does the specification describe the analysis that takes place? I looked at the specification pretty carefully for that, and I had difficulty in figuring out what was meant by the analysis of the physical characteristic signal. One of the places is Appendix 96. I apologize. May I get some water? Sure. Oh, boy. Are you going to make us read these equations? No. No, I'm not going to make you read the equations, Your Honor. I'm actually at Column A96. At Column 7, above the equations, it specifically says, I'm at Line 5, an interpreter filters and analyzes the raw signals from these sensors and produces a physical characteristic signal, which can be a bus or a single vector. So it can be a number of pieces of information that are represented of the state of the user as a bus, or it can be just a single vector. The analyzer reads from the behavioral module and produces a rendering vector, which would be used to display the environment. In addition, if we look at Page A94, Column 4 of the patent, at Line 11, it says, different sensors will be located throughout the theater, enabling technicians to record real activity signals from the theater. So this is the part of the physical characteristic signal that has the activity. And it talks about a first derivative of the signal will be calculated that gives the movement. A second derivative will give sudden movement. Yeah, but my problem is the specification doesn't describe what it means by analysis. Well, sure it does. If we go down, the position of the visitor, this is at Line 29. The position of the visitor will also be determined. Line 29, which column? I apologize, same page, Column 4. Yes. The position of the visitor will also be determined. So it's got sensors and it says, okay, here's my position. It's giving me an XYZ coordinate. And then if you go down to Line 35, also the information on the visitor activity and position could be represented on a contour map. And then if you go to 40, a curious actor is going to go toward the visitor, a frightened actor will retreat. And here's the analysis. The first derivative of the position of the user, I'm sorry, of the visitor will indicate displacement of the visitor. The second derivative of the position will detect sudden movements. So if I take change in position, that's the derivative, position 1, position 2, position 3, that's my displacement, I'm moving. So that's the analysis that tells the system, hey, you're going away from the whale, or if I'm going this way, I'm going toward the whale. Where is this in the claim? Well, the claim covers all of these possible embodiments. The question was, where in the specification do we describe this analysis? My point is, the claim simply requires the physical characteristic signal provide information on visitor activity and location. Right, but I guess Judge Dyke's hypothetical was assuming for the moment that this court reads physical characteristic signal to be position information, or that it can be just position information. If that's the case, then all these derivatives of the position information aren't part of the position information as recited or understood to be a particular embodiment covered within the claim. I don't think it would be within the claim. If the only thing, if the only piece of information that is provided by the physical characteristic signal is just position information, you don't meet this limitation. Where in said physical characteristic signal... Position information means where the visitor is located at that moment. In the theater. At any given time. Time 1, time 2, time... Wait, wait, wait. I'm sorry. Does it mean, is position information a single piece of information about where the visitor is now? At the last measurement, yes. So, for example, in my hypothetical, my location, it's going to know where I started, and then I'm moving this way, and then when it's going to tell that whale to move, it needs to know my location at that point. I'm sorry, you're not answering my question. Does the term position information refer to the last position of the visitor within the theater? No, it refers to the position of the visitor within the theater at a given point in time. So, this is an iterative process, and if you go... Well, would position information be... You say it could encompass different positions over time, but does it also include a single point, which is the last location of the visitor? Yes, it could, but in that instance... Well, I'm not sure that if the only thing you're measuring is at a single point in time, the location within the theater, that position information, I'm not sure that that would meet the other limitations of the claim. I'm not sure it would work. It wouldn't be a very good game. I mean, the whole purpose of this patent is to constantly update what I do so that I have a real-time environment, and that's later on in the claim. You have to, on page A-100 in Claim 1, column 16, analyze the physical characteristic signal and a change over time of the physical characteristic signal. So, your argument is that position information isn't just... can't be a single point, that is the last location. It has to be something that shows the movement over time of the position. No, I think the position information itself is the position of the visitor at a given point in time, and if you measure it only at one point, it is that position. What I'm saying is, I'm not sure if that's the only thing within a physical characteristic signal that the other limitations of the claim would be met. Well, that seems to come back to the argument that the physical activity signal has to include something more than position information. And it's set forth right there in the claim. It specifically says that physical characteristic signal has to provide information on visitor activity and location. As Judge Chen pointed out, location is your position information, but activity is not. Even if I'm standing still, and I never move, and my location stays the same, if the system reads that and says, this person is not moving, that's activity information, and that's referenced in the specification. Because if I'm not moving, and I'm staying in that location, the whale doesn't care about me as long as I'm outside its field of reference. Except that column 4, line 30, it says sensors located for all positions will detect at least one physical characteristic, such as position for the visitor. Correct. So it seems to say that position can be the physical characteristic, and that you don't need other things. Well, if we're interpreting the claim, we have to remember, let's assume we're only measuring position or location. If we measure position at different points in time, and we analyze that to put that in the physical characteristic signal, we can determine activity and include that in the signal by judging movement. In your hypothetical, though, Judge Dyke, if we're only measuring position at one point in time and stop, I would argue you cannot determine activity because you're only measuring at one point in time. You can certainly measure position at different points in time and only measure position. But even then, when you analyze it, you can determine the activity. Okay. There seem to be two theories that the district court had in terms of finding your claim indefinite. One was this logical impossibility theme, right? How can you be using position information both outside and inside the physical characteristic signal in order to generate some behavior response of your animals? But then the second theory was, she cannot understand the relationship between these two inputs. Input number one being position information standing alone. Input number two is the physical characteristic signal, which already includes position information. And so, what's your response to the second theory? My response to the second theory is, the patent does give a specific example. I mean, I was a little troubled and continue to be a little troubled by this. What is the relationship between these two items? Because I don't think that's necessarily a definite inquiry. Setting that aside, a specific example given in the patent is one input is position information. Is the whale moving toward me or away from me? It needs to know where I'm located. That's strictly my current position, my last known position. It's going to measure that and it's going to have the whale move toward me. It's not a very good game. If I'm here and the whale swims over there, if I want the whale or the shark to swim toward me, that's just position. That's one input. The second input is the magnitude of that movement of that whale. And just based, you could just use distance. If I'm 10 feet away, the movement of the whale can be inversely proportional to the distance between me and the whale. So that's also using my position, but analyzing it to determine how far I am from the whale and then generating the magnitude of how fast that whale is going to move away from me. And so that's two different inputs into the determination of the movement of that whale. One is strictly just position information and the other one has more information. It's my position plus my distance from the whale and then you invert it and you determine the magnitude of the distance. Your reference at the bottom of the claim to said position information and said at least one physical characteristic signal, that reference to said position information, is that, is it your understanding that the claim is or the claim of invention is extracting the position information that's already inside the physical characteristic signal and using it for one purpose and then you're using all of the contents of the physical characteristic signal, including the position information, for some second purpose. Is that how you want me to read the claim? That's certainly covered and embodiment that's covered. My point is the claim doesn't delineate how the behavior module receives the position information. One could be exactly as you state. It simply receives the physical characteristic signal, which contains within it the position information. It extracts it and uses it independently or you can have a separate input where position information is input in addition to receiving the physical characteristic signal and then have them independently. Your figure four doesn't show that. Well, no. Figure four, I agree with you, only shows extracting it from the physical characteristic signal, but it's only single embodied. But my point is the claim only requires using both. It doesn't delineate how you obtain the position information, whether you obtain it directly or extract it from the physical characteristic signal. Okay. Thank you, Mr. Simon. All right. Thank you. Mrs. Degnan, is that the way you pronounce it? Yes, Your Honor. May I please support Lauren Degnan from Microsoft? I wanted to start by identifying one key flaw in virtual solutions argument in the brief in that it seemed to fault the district court for not performing a claim construction before determining whether the physical characteristic signal in definite. The district court has never held that one must perform a claim construction before finding definiteness. Why don't you address what we were concerned about at the end of the argument, which their argument seems to be the physical activity signal by virtue of the claim language itself includes something more than position information. It's an aggregate and therefore the district court's conclusion that there's a problem with having two things the same doesn't apply. And if I could just supplement Judge Degg's question specifically column 16 lines 14 through 16 where the claim says wherein said physical characteristic signal provides information on visitor activity and location within said theater area. Doesn't that mean the claim is self-defining right there that it's more than just position information? I think it does not do that, Your Honor. So in terms of this wherein clause, the wherein clause talks about, as you rightly point out, wherein a physical characteristic signal provides information on visitor activity and position. Now the patent discloses to us that the position information does indeed provide information on or about visitor activity. It does that because using position information alone over time you can learn information about the visitor activity. And so what we see here in the patent itself is that... That seems to be a problem for you because then the physical characteristic signal is composed of position information over time whereas the position information itself is just the location at one point in time. Yeah, I would disagree with that because the physical characteristic signal may include only position information. That data gets received by another software module, the behavior module. That behavior module... I don't think you're addressing my question. If you construe a physical activity signal as including a variety of positional information over time, that is something different than position information if position information means the location at one particular point in time. Right, and I think that intrinsic record tells us that position information means a specific location in space at a specific period of time. They seem to agree with that. Okay, so that is what is delivered, only the position information. Later on in the claim it talks about how another software module will analyze the physical characteristic signal, which is position information, and a change over time of that physical characteristic signal. So what we're seeing when we see the derivatives talked about in the written description is that the physical characteristic signal includes position information. When it's later in claim 1D, you're analyzing the physical characteristic signal over time, that's when the derivatives are being taken. So they are not already embedded in the physical characteristic signal, the change over time of the physical characteristic signal, you'll be having second, third, possibly fourth derivatives. The patent is completely silent on that. So I think when you look at the claim as a whole, it's entirely consistent with the idea that position information is included in the physical characteristic signal. So basically what you're saying is that the information that's included in the physical activity signal. That is correct, Your Honor. So then that still leaves us wondering, what does visitor activity mean up there? Right, so visitor activity again... And this patent talks about all kinds of sensors that is, you know, collecting data about the visitor. It could be sonic sensors, haptics sensors, cameras, something called body language interpreters, whatever that may be. The point is that that seems to be the data that's being collected by the sensor, the claim sensor in claim 1. And so why wouldn't that be the better understanding of visitor activity, which has really, in that context, nothing really to do with position of the visitor? Well, I mean, I have two responses to that inquiry. First, I go back to the where and clause. It talks about the function that needs to be done, and the function is providing information on visitor activity. And using position information over time, that provides information on visitor activity. Secondly, with respect to your discussion of all the sensors. So the sensors that are discussed in the patent, for example, even the microphones in the dome, they talk about triangulation to find the position of the human, the user of the system. So I think in this claim, when we're talking about the physical characteristic signal, including position information, it discloses a lot of different ways you could get position information, for example, using the triangulated microphone. And so I would say that nothing in the claim language requires there to be anything besides position information in order for the where and clause and function to be accomplished. Okay, you didn't quite answer the body language interpreter part, which could also be part of... Oh, so I can explain the body language interpreter. That would be, we understand some gesture recognition. So that takes position over time and recognizes what gesture, I'm waving my hand back and forth. They'll take the position at this time, position at this time, position at this time, and they're able to, through an algorithm, understand, again, using position information, what the activity is, is I'm waving my hand. And so I think when the patent talks about this gesture recognition software, it's not a sensor per se, it's really software that takes as it's happening by the user. This alternate theory of the district court judge, where she said she couldn't understand the relationship between the presided position information, physical characteristic signal, to generate a behavior vector and how they interrelate with each other and how that would be accomplished. Doesn't that sound more an enablement than indefiniteness? I think she was absolutely not doing any sort of enablement or operability analysis whatsoever. I think, the way I view the district court's opinion, Judge Chen, is that she was looking into what the relationship was between physical characteristic signal and position information precisely so she could try to resolve the contradiction. The contradiction arose because in 1D, we've got this redundancy. The said position information is essentially recited twice. The analogy we use is to say I'm creating a lunch, including a sandwich, then I eat said lunch and said sandwich. So in order to be faithful to this court's teachings that we don't really allow redundancy of that manner, the court felt like there was a contradiction. But she looked in the specification to see is there a reason we should deviate from this redundancy rule, this rule against redundancy? Is there a way she could understand from the specification what the relationship was between position information and physical characteristic signal? I don't see it as an alternative basis for her opinion. It was part of her analysis, starting with the claim language, going through the specification, trying to understand if there was something in the specification that would trump the claim language which was contradictory. And I think what she found, given there's almost no discussion whatsoever about the physical characteristic signal, that passage from column 7, which your honors were looking at with counsel, is the only discussion of physical characteristic signal. And it says it could be a bus or a single vector. And so the court was looking for how can I define physical characteristic signal, and the only places in the patent is that cryptic reference in figures in column 7, and then claim 1 itself, which suggests in 1b that includes physical characteristics, it includes position information, and in 1d that it does not include said position information. So right now the claim says to generate a behavior vector of said at least one virtual actor using said position information and said at least one physical characteristic signal. And for that reason you think it's indefinite. If the claim instead said to generate a behavior vector using said physical characteristic signal including said position information, that claim would be clear to you, right? It would. It would, your honor. But that requires this court in virtual solutions to rewrite and do surgery on the claim. And this court does not rewrite claims to preserve validity. That in numerous cases, Ryan DiCascio is the case we cite in our brief. We don't rewrite the claims to preserve that. The notice function is to be that a litigant looks at on its face and cannot determine, nor could the court, what makes up the physical characteristic signal. And if that claim had been written differently, I'm sure we would not be here. And should they go to reissue and rewrite the claim, then we'll have a different issue. But today this court has held that litigation is not the time to rewrite your claim. The time to take care with your claims is while you're before the patent office and you're able to amend them and then put the public on notice that's the scope of your invention. And I posit to you, Judge Chen, that it would be difficult to be faithful to this court's admonishments about claim construction and not rewriting claims during claim construction to preserve validity to come up with any claim construction of physical characteristic signal that makes this claim definite. I want to come back just for a moment to the language that they're relying on, which they say is the key language, provides information on visitor activity and location. Are you meaning that to say provides information on one item of visitor activity and location so that position information would be that item? I'm still having trouble. Sure. So I take a kind of a broader view on what it means to provide information on visitor activity. It doesn't say tell me the visitor activity. It doesn't say identify the visitor activity. It says provide information on or about visitor activity. And to do that, you're providing information on visitor activity by saying my hand is here. Is visitor activity different from location? I believe it is, Your Honor. Okay. And location is the same as position? Yes. It's where the user is in the physical space. Okay. So they say that this must mean that you have some visitor activity information going into the physical characteristic signal in addition to the position information. I think that's not true because what's part of the physical characteristic signal, according to the claim, is the position information. It is used, for example, to know where the human is in the three-dimensional space. But they're saying it can't be exclusively position information in the light of this language that talks about supplying information about visitor activity. Right. So I think there's two responses to that argument. The first one is the one I'm trying to make and that doesn't say I have to provide and identify what the activity is. It's information on. And since position information is used by software to determine the activity, that's enough. It's kind of a broadly written language, information on. Second, the second point I would make on that, thank you, is that, it escaped me. I'm on time. Okay. Any other questions? Any other points you want to make? No, Your Honor. Okay. Thank you, Ms. Deegan. Mr. Simon, you have two minutes. Thank you, Your Honor. Just a couple points. The first is we are critical of the district court for not performing claim construction. What we're experiencing here today is now we're trying to meet. And that very exercise, had it been done by the district court, would have resolved some of these issues. And I also, the second one I want to make is column four. It's pretty opaque though. Claim construction, we say, is a matter of law, right? Correct. So, I mean, if she didn't do it, we could do it. I would have no problem with that, Your Honor. Well, I think we could do it if we could understand it. That's right. And there was one particular case where this court, I think it was a case where this court declined to do it in the first instance and set it back down. That's certainly an option. It's a de novo review. It certainly could be done here. The issue though is whether or not this claim is indefinite. And our point is there never was a finding that it was not amenable to construction or insolubly ambiguous. There was this hypothetical where there was a particular embodiment. And if the claim covers that particular embodiment, an inoperable embodiment, somehow it's indefinite, which isn't the test. But I do want to get back to this point about activity. The contention that I just heard was that Microsoft claims that activity is only limited to position information anyway. And column four on page A-94 of the appendix at line 11 says different sensors will be located throughout the theater enabling technicians to record real activity signals from the theater. And one of the examples at line 17 is the one, Judge Shane, you pointed out, sensors affixed to the body of the visitor, body language interpreters. So that's not the position or location of the actor. And to make the point expressly clear, if you go down to line 30, I'm sorry, 29 in the same column, the position of the visitor will also be determined. So right here in the specification, we say there's recordation and signals related to activity. And in addition, there's position of the visitor that will be determined. And it talks about different sensors that talk about location, locating position. So there's clearly... Sensors on the body, though, would still require triangulation, would it not? No. How would it be received? Actually, I think you're probably right. There probably have to be a number of sensors. And then I would have something on my hand if it's a shooting game or something. And it would triangulate the position of my hand. I think it probably would require triangulation based on my understanding of the technology. And that's position. Well, it's position of my hand. It's not position of the visitor. It's the activity. I mean, there's other examples given. I mean, there's optical detection, handheld devices that the visitor would carry, tactile plates. It even talks about sound, whether I'm talking. So it gives an example in the specification of a sleeping fish. And if the fish is sleeping and I move around, the fish wouldn't do anything. But if I make a sound and that sensor picks up a sound, the fish is going to awaken, turn toward the sound. It needs to know my location, so it's going to turn toward the sound. The activity is the sound. It needs my position information to say, okay, turn toward the sound. So it's going to use both of those. And that's an example given in the specification that shows activity different from location or position information that's included within the physical characteristic signal. That's a reasonable interpretation of this claim, and it would refute the argument that was just made by Microsoft that activity is only necessarily limited to that. Unless there are any other questions, that's all I have. Okay. Thank you. I thank both counsel. The case is submitted, and that concludes our session for today.